May it please the Court, good morning. My name is Ramsey Nasser from Federal Defenders of San Diego, and I represent Jason Anthony Reynolds, who was subject to a 24-level enhancement based on a heightened mens rea that was not charged, that was not proven to a jury, and that was in no way part of the offensive case. You would think for such a large upward adjustment you'd need a pretty clear statement from the Sentencing Commission that it was in fact appropriate, but I plan to argue for four reasons that it is indeed not appropriate and clearly not the intent of the Sentencing Commission for this 24-level upward adjustment to apply. The first being the text of the smuggling guideline 2T, the second being the text of the drug guideline 2D1.11, the third being Appendix A, a third place in the guidelines you can look, and the fourth being the general application principles listed under 1B1.2. So starting with the smuggling guideline, we all agree pretty much at the starting point that what needs to be done pursuant to Crawford and the introductory commentary is to go to the statutory appendix and see where it takes you, and here we agree it takes you to the smuggling guideline in 2T3.1. What we don't agree about is whether the cross-reference under 2T3.1C applies, and what it comes down to in regard to this particular issue is what does contraband mean, because it says that that cross-reference only applies to contraband items, and there are two different definitions before Your Honors. Contraband is not defined anywhere in the guidelines. Both sides agree. Mr. Yes. Let me just ask you a grammatical question about that sentence in 2T3.1, if you have it in front of you. Yes, I do, Your Honor. I read that sentence as pertaining not only to contraband, and here's why I read it that way, and tell me what's wrong with my grammar. It is, and I'm reading from the second sentence, it is not intended to deal with the importation of contraband such as drugs. Okay, that's where contraband, I think, ends grammatically, or other items such as obscene material, firearms, or pelts of endangered species, the importation of which is prohibited or restricted for non-economic reasons. In other words, I read it to say importation of contraband or importation of other items, the importation of which is prohibited or restricted. And so just, and that contraband ends after the example drug. What's wrong with that? Nothing, Your Honor. That's the exact grammatical reading that I would suggest. And why isn't this a situation in which the importation is restricted of this item? Well, Your Honor, even if it is, and I don't know if we need to concede that since there's been no evidence that there's any particular restrictions on iodine per se, but I think what's important here is that Your Honor notices that. Well, it's a list too chemical, though. It is a list too chemical. But just assuming, which we wouldn't concede, that it is restricted and it's for non-economic reasons, what this sentence shows you is that there's two different things that they're talking about. They're talking about contraband, such as drugs, on the one hand, and then things that are restricted for non-economic reasons on the other hand. And they say that this guideline is not intended to deal with those. It does say that. However, the final sentence of the guideline says that there's other ways to deal with this. You can apply a more specific guideline or you can apply a sentence above that specified in this subpart. And I think that that grammatical difference between what's contraband and the simple things that are regulated for economic reasons comes into play when you read the text of C, which is what we're asking about here today. And C specifically only says a contraband item. So you think that that is – okay, I understand your argument. I guess I just think that – go ahead. I'd like you to go ahead to the next level of your argument. Well, Your Honor, yes. On that subject, could I just interject a question here? My question is, does iodine become contraband when your client clandestinely imported it with the intent to manufacture a controlled substance? And we have proof of that in light of the introductory comments here. I would say no, Your Honor, just for the reasons that Judge Graber stated before in terms of they're trying to make contraband one thing and items regulated for non-economic reasons another thing. And though I think what really drives this – They're telling you that you have to go somewhere else for both of those things. I guess that's my issue. Your Honor, the – what it tells you on that last sentence is it says that there's two things that you could do. You could refer to another more specific guideline, if applicable, or for imposing a sentence above that specified in the guideline of the subpart. And the way this should work is all laid out in Note 2, where it specifically says if this is an item that is prohibited, limited, or restricted – see, suddenly now we're talking about that other class, which Your Honor already noticed is distinct from contraband – then what you should do is you should apply a upward departure. And you're – this Court's going to hear the case of the United States v. Cerner right after this, and that's exactly what the judge did in that case. So it's a perfectly reasonable thing to do. And I think the division between contraband and non-contraband helps us immensely because C only refers to contraband. And I think this Court really needs to decide what contraband is. And the problem that we would raise with the government's definition – Okay. And ask you whether you think that 2D1.11 is the correct guideline section to be applied to this individual. Absolutely not, Your Honor, because it is not a more appropriate guideline to apply. Why not? Doesn't it describe exactly what he did? Well, Your Honor, the 2D1.11 is designed to deal with people who have a different mens rea. If you look for the statute that's most close to what he did, I think you'd have to go to – you'd have to go to 960D6, I believe, which is going to send you to a much lower guideline. What about 2D1.13? 2D1.13, the government concedes, and they do this on – Well, this is a legal question, so they can't concede a legal question. Okay. 2D1.13, by its very title, doesn't apply here. Because if you read 2D1.13's title, you see that it doesn't apply to the conduct here. It has to do with structure and chemical transactions, which he did not do, or creating a chemical mixture, which he did not do. Did either party raise the materiality of that guideline to the district court? 2D1.13, yes, we did, Your Honor. You did, okay. We did use that as a secondary item that the judge could apply. However, I think this is really in line with Carrillo, which is cited in our briefs, where the district court applied a 2S provision, which ultimately applied, though it seemed to be fair on the facts, ultimately applied to not entering something into a document, a failure to enter the money. And there was just none of that in this case. And here, there's no structuring a chemical transaction, and there's no creating a chemical mixture. So it's clear that 2D1.13 isn't going to apply. I thought it applied to importing or exporting chemicals – or, excuse me, to defrauding by smuggling things. Well, it says presenting false or fraudulent identification to obtain a listed chemical, but I think that's pretty specific. They certainly know how to say fraud when they mean it. I have very limited time left, so I think I'm going to reserve the rest of my time for rebuttal. You may do so. May it please the Court, Roger Haynes, representing the United States in this matter. I agree, I think, generally with Judge Graber's comment about the introductory commentary. The question in this case, I think, is what is the meaning of the word contraband in 2T3.1? And as we read that introductory commentary, we would emphasize these words. It says, This subpart, 2T3.1, is designed to address violations involving revenue collection or trade regulation. It is not intended to deal with the importation of contraband, such as drugs or other items, dot, dot, dot, the importation of which is prohibited or restricted for non-economic reasons. So is it your position that regardless of how we parse the end of that sentence, any time we're dealing with importation rather than revenue collection or trade restriction, we know that we're not supposed to be here, but we're supposed to be somewhere else? I'm not sure I'd emphasize the word importation. I would emphasize the words, is this item restricted for non-economic reasons? That, I think, is the crucial language. And Application Note 2 repeats that discussion of trade regulation, trade policies, and whatnot. The question is whether or not this is the kind of substance that is prohibited or regulated, not simply because we're trying to collect taxes, but because there is some other reason to do it. It's dangerous. And in this case, the reason is that it's a precursor chemical listed in the statutes as a precursor chemical in the manufacture of methamphetamine. So let me be sure I understand your position. It is any time we get past merely tax collection or trade regulation and we get to importation of something restricted for non-economic reasons, that's when we stop with this guideline and we cross-reference? Yes. At that point, we look to see. That means it's contraband. And we then look to see whether there is a more appropriate guideline. You know what bothers me about this? You charged him under 545. You could have charged him under 960D3. And there's a tremendous difference in the sentence. And it seems to me that just by your act of deciding what to charge, that there would be a tremendously unfair result. Two answers to that. First of all, at the time we charged this defendant, we did not know that we could prove or we could not prove that he knew this was going to be used to make methamphetamine. It was only after his co-defendant cooperated at the time of her plea and agreed to testify against him that we were able to prove through her that he knew that he could ñ that he knew this would be used to make methamphetamine. So at the time of the indictment, we could not have proved it. At the time he pled guilty, we could not have proved it. The real question, though, the Court, I think, is getting at is the question that was raised in the Chang case, which is cited by defense counsel. And I'm very eager to respond to that because now that it's been discussed, I think it's important for us to be able to respond to it. Chang is absolutely wrong because, first of all, well, let me get to the ñ it has some poor reasoning in it, but just to get to the crux of the matter, Chang essentially makes the point Your Honor is making. Why should the government be able to charge a lesser offense and then a sentencing, jack up the sentence by relying on a much more severe guideline? And the answer, I'm afraid, is that that is exactly what the guidelines are based on. It's the real ñ what's called real offense sentencing, not charge offense sentencing. And it's been upheld repeatedly by the U.S. Supreme Court and by this Court en banc and by every other circuit. By reference to Section 1B1.3, the sentence must be based on all relevant conduct, including acquitted conduct, which has been upheld by the Supreme Court in Watts. I'm sorry? Where are you reading from, I'm sorry? From my notes, Your Honor. I'm sorry. I thought you were ñ That's an excellent source. It is. I thought you were ñ you were quoting something. I'm quoting 1B1.3, which says relevant conduct must be based on all relevant conduct, and it's defined there. But ñ and this is actually in a 28J letter that I sent to the Court yesterday, and I hope you have received it. And so I am quoting from my 28J letter to some extent. Okay. That's fine. At any rate, relevant conduct clearly includes acquitted conduct, which was upheld by the Supreme Court in U.S. v. Watts in 1997, uncharged conduct, which was upheld by this Court sitting en banc in U.S. v. Restrepo in 1991, that's 946 Fed 2nd 6454, and even dismissed conduct, which was upheld by this Court sitting en banc in U.S. v. Fine, 975 Fed 2nd 596, 9th Circuit, 1992. That is Hornbook law under the guidelines. This is the way the guidelines work. If the matter is proved at sentencing, the defendant is sentenced based on his relevant conduct, what he actually did, not what was charged by the government. The benefit the defendant receives from being charged with or pleading guilty to a lesser offense is that it caps his sentence. In this case, that's 60 months. But he still must be sentenced under the guidelines for his entire relevant conduct. And the opinion in Chang is absolutely wrong, runs contrary to every one of these opinions, and would obviously not have stood the test of time if it had been published and the government had been allowed, had been, had filed a petition for re-hearing en banc. Well, we're not bound by it because it is not. You're not bound by it. Yes. And you can file for a petition for re-hearing en banc even if it is unpublished. No. And you also can apply for cert. Not with this solicitor general, Your Honor. All right. Thank you. Thank you. If there are, is there any other questions? I'm, thank you. No, I don't think so. We have a little bit of time remaining for rebuttal. I'm just trying to address the points in order. In terms of the definition that he's using for contraband, anything that's brought in illegally, it would make the word contraband in C total surplusage. This argument was started by Judge Graber pointing out that they distinguish contraband from things that are regulated for non-economic reasons. Only the word contraband is in that C, which gives you the 24-level box, so that's pretty huge. And those economic reasons ones are in 2, application note 2, and they say that the judge can do a departure based on some measure, just like a judge did in Cerna in the next case. Well, at least one circuit has interpreted contraband to include anything that's imported in violation of restrictions, even if it would be lawful to import it if certain procedures have been followed. Your Honor, if you're referring to the case the government cites, it was definitely not in this context. It was said in passing, and they were citing from a district court case that I cited in my reply brief, where they said, as a general matter, it means things that are illegal to possess, that there's a secondary meaning that also means something that's imported contrary to law. And that second meaning was actually omitted from a subsequent edition of that exact dictionary, and I mentioned that in my reply brief. In regard to him saying that they didn't, he didn't cite any place in the record why it wasn't, they didn't know that they could get the conviction until the indictment time, but I can represent to your honors that from the very beginning, the prosecutor in this case told me that this was going to have to be under this guideline. This is going to have to be under 2D. They give you a fast-track offer when you first start, and it was never on the table, this idea that they would ever apply the lower guidelines. So it's never, ever been indicated to me. I've had this case since the day the person came into court, and it's never been indicated to me that there's ever a chance that any other guideline would apply. Just the final thing is, there's been a lot of talk about real conduct and how the guidelines are supposed to follow real conduct. I would direct your honors to the introductory note 1A1.1, which talks about real versus charged conduct, and it says specifically that the guidelines have a modified approach, that they sometimes care about what was charged and they sometimes care about what was actually done. And I think that if you look at the introductory commentary in 1B1.2, it tells you look at what was charged to decide which guideline applies, and then from there you can go to the different ranges inside that guideline based on relevant conduct. You can't change guidelines, and that's what 1B1.2 means. And with all that, I think it's at least really ambiguous, and I think the rule of lenity should apply. It's ambiguous what Congress meant here. And I hope that your honors will reverse the sentence. Thank you. Thank you very much. The case has argued as submitted. And we will turn to Gillard v. Almeida.
judges: Gibson , D.W. Nelson, Graber